IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

CHELESY EASTEP, as surviving
spouse and next of kin of LANDON
DWAYNE EASTEP,

    Plaintiff,

vs.

CITY OF NASHVILLE, TENNESSEE;

BRIAN MURPHY, STEVEN CARRICK,
EDIN PLANCIC, SEAN WILLIAMS,
JUSTIN PINKELTON, and JAMES KIDD,
in their individual capacities as officers of the
Metropolitan Nashville Police Department;

CITY OF MT. JULIET, TENNESSEE;

FABJAN LLUKAJ, in his individual capacity
as an officer of the Mt. Juliet Police
Department;

and

REGGIE EDGE, JR, and CHARLES
ACHINGER, in their individual capacities
as officers of the Tennessee Highway Patrol,

    Defendants.

Case No. _____

*Jury Trial Demanded*

## COMPLAINT

COMES NOW the Plaintiff, CHELESY EASTEP, who is the surviving spouse and next kin of LANDON EASTEP, and for cause of actions against the Defendants, respectfully states as follows:

## I. Introduction

1. This Complaint arises out of the death of Landon Dwayne Eastep (*i.e.*, "Mr. Eastep") on the afternoon of January 27, 2022. Mr. Eastep was shot twelve (12) times by officers of the Tennessee Highway Patrol, the Metropolitan Nashville Police Department, and the Mt. Juliet Police Department on the northbound shoulder of Interstate 65 at mile marker 76, approximately ten miles south of downtown Nashville, Tennessee.

2. The police officers and state troopers who shot Mr. Eastep acted under color of law when they violated his constitutional right to be free from the use of excessive force, thereby causing his brutal death. Furthermore, these law enforcement officers acted in accordance with unconstitutional policies, customs, usages, and/or practices that had been promulgated by the policymakers in their respective jurisdictions.

3. Mr. Eastep leaves behind an estate with beneficiaries, including his wife and his minor child. Therefore, as Mr. Eastep's surviving spouse, Plaintiff Chelsey Eastep seeks money damages against these law enforcement officers pursuant to 42 U.S.C. § 1983 to redress the deprivation of Mr. Eastep's established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Moreover, Plaintiff seeks money damages against the cities of Nashville, Tennessee and Mt. Juliet, Tennessee, pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 *(1978)* and its progeny because the unconstitutional policies, customs, usages, and practices of these cities were the moving forces behind the actions of their respective police officers.[1] Plaintiff also seeks her attorney's fees and costs pursuant to 42 U.S.C. § 1988.

---

[1] Plaintiff would otherwise sue the State of Tennessee or the Tennessee Highway Patrol under the *Monell* theory of liability. However, the Eleventh Amendment prohibits suits against the State of

## II. Jurisdiction and Venue

4. This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourteenth Amendment to the United States Constitution. It arises out of the execution-style shooting and resultant death of Mr. Eastep on Interstate 65 Northbound at mile marker 76 in Davidson County, Tennessee. Mr. Eastep died because of the actions and omissions of the Defendants, all of whom were acting under color of state law.

5. Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343 (a)(3)(4) and § 1367(a). Moreover, this Court has jurisdiction over the Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which gave rise to this cause of action occurred within this district and within one (1) year of the filing of this Complaint and this Court otherwise has jurisdiction.

7. This action is brought additionally and alternatively pursuant to the Tennessee Governmental Liability Act, T.C.A. § 29-20-101 *et seq*.

## The Parties

8. At all times relevant hereto and until the time of his death on January 27, 2022, the decedent, Landon Eastep was a citizen of the United States and of the State of Tennessee.

---

Tennessee in Federal Court. See *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (holding that Eleventh Amendment prohibits suits against States in Federal Court); *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) (holding that Federal suits against agencies of the State of Tennessee are prohibited); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983).

9. The Plaintiff, Chelesy Eastep, is the surviving spouse and next of kin of Landon Eastep. Pursuant to Tennessee's wrongful death statutes, Ms. Eastep has a duty to protect the interests of her late husband's estate for the benefit of his minor child. She is an adult resident citizen of the City of Tullahoma, County of Coffee, State of Tennessee.

10. Defendant City of Nashville, Tennessee is a political subdivision of the State of Tennessee. At all material times, Defendant was responsible for the training and supervision of Defendants Brian Murphy, Steven Carrick, Edin Plancic, Sean Williams, Justin Pinkelton and James Kidd. At all material times, the City of Nashville, Tennessee delegated to Police Chief John Drake the responsibility to establish and implement policies, practices, procedures and customs used by Metropolitan Nashville Police Officers regarding the use of force and the escalation of encounters with individuals experiencing emotional distress. At all material times, Defendant City of Nashville, Tennessee acted under color of law.

11. Defendant Brian Murphy was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Murphy acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

12. Defendant Steven Carrick was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Carrick acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

13. Defendant Edin Plancic was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Plancic acted

under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

14. Defendant Sean Williams was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Williams acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

15. Defendant Justin Pinkelton was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Pinkelton acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

16. Defendant James Kidd was employed by the City of Nashville, Tennessee and the Metropolitan Nashville Police Department. At all material times, Defendant Kidd acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

17. Defendant City of Mt. Juliet, Tennessee is a political subdivision of the State of Tennessee. At all material times, Defendant was responsible for the training and supervision of Defendant Fabjan Llukaj. At all material times, Defendant City of Mt. Juliet, Tennessee delegated to Police Chief John Hambrick the responsibility to establish and implement policies, practices, procedures and customs used by Mt. Juliet Police Department Police Officers regarding the use of force and the escalation of encounters with individuals experiencing emotional distress.

18. Defendant Fabjan Llukaj was employed by the City of Mt. Juliet, Tennessee and the Mt. Juliet Police Department. At all material times, Defendant Llukaj acted under

color of state law by virtue of his authority as a law enforcement officer for the Mt. Juliet Police Department. He is sued in his individual capacity.

19. Defendant Reggie Edge was employed by the State of Tennessee and the Tennessee Highway Patrol. At all material times, Defendant Edge acted under color of state law by virtue of his authority as a law enforcement officer for the Tennessee Highway Patrol. He is sued in his individual capacity.

20. Defendant Charles Achinger was employed by the State of Tennessee and the Tennessee Highway Patrol. At all material times, Defendant Achinger acted under color of state law by virtue of his authority as a law enforcement officer for the Tennessee Highway Patrol. He is sued in his individual capacity.

### III. Factual Allegations

21. On January 27, 2022, at approximately 2:00 p.m., thirty-seven (37) year-old Landon Eastep was sitting on a guardrail on the far shoulder of Interstate 65 Northbound at mile marker 76.

22. Defendant Reggie Edge, Jr. of Tennessee Highway Patrol approached Mr. Eastep and began speaking with him. Defendant Llukaj, an off-duty Mt. Juliet Police Department officer, also stopped to assist Defendant Reggie Edge, Jr. Shortly thereafter, Defendants Murphy, Carrick, Plancic, Williams, Pinkelton and Kidd, all from the Metropolitan Nashville Police Department, and Defendant Charles Achinger of the Tennessee Highway Patrol arrived to provide backup support.

23. Negotiations with Landon Eastep aimed at convincing him to "surrender" continued for approximately thirty (30) minutes. Contrary to reasonable practices, the Defendants with situational command decided to call for an inexplicably excessive number

of backup officers to respond to the scene, to draw their firearms, to form a semi-circle firing squad and **create** the danger which ultimately turned fatal. During this encounter with law enforcement officers, Mr. Eastep became emotional, began sobbing, and reportedly started cutting his wrists a few times with a box cutter from his pocket. Instead of engaging de-escalation procedures, the Defendants escalated the encounter by continuing to point loaded semi-automatic pistols and long guns at Mr. Eastep in an overt show of force. Although Mr. Eastep was emotionally distressed, he did not pose a threat to law enforcement officers, nor did he commit any misdemeanor or felony in their presence, nor did he pose a danger to himself or to the general public. No law enforcement officer came within arm's reach of Mr. Eastep. The overall impression was clear from the overwhelming physical showing of force, Mr. Eastep would not be able to survive this encounter. Under the concept of divided attention, Mr. Eastep was incapable of fully understanding the verbal commands of the Defendants while having the prodigious display of lethality steadily encroaching and encircling him.

24. Negotiations ceased when Landon Eastep reached for a "cylindrical metal object."[2] It was not a gun or any other type of weapon that could have posed a threat to the law enforcement officers. Nevertheless, every police officer and state trooper on the scene simultaneously opened fire on Mr. Eastep, killing him. No law enforcement officers were in any way injured in the incident.

25. The final two shots were fired by Defendant Murphy with a long gun after Mr. Eastep had been shot multiple times and had fallen to the ground, and after a loud and

---

[2] These are the words used by the Director of Public Affairs of the Nashville Metropolitan Police Department. However, Plaintiff has not seen any evidence of this assertion.

unmistakable "cease fire" had been yelled by another officer. Within hours of the incident, Defendant Murphy was decommissioned and stripped of his police authority pending an investigation into his actions.

26. Autopsy findings confirm that Mr. Eastep suffered twelve (12) bullet wounds from his shoulders down to his left leg. Four (4) of the bullets that struck him traveled front to back, while five (5) entered through his back. When he was initially struck by the gunfire, Mr. Eastep fell to the ground, landing on his side with his back towards some of the officers. The bullets fractured numerous bones and two vertebrae. A gunshot wound to his chest hit both his lungs, heart, and aorta. The autopsy report confirmed Landon Eastep also had minor blunt force trauma to his body with several bruises, cuts, and scrapes.

27. The actions of the individual Defendants as stated above caused extreme, almost unfathomable, pain and suffering to Landon Eastep prior to his death.

28. All acts of the individual Defendants involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of Tennessee, under the color of law and by virtue of their authority as law enforcement officers, and in the course and scope of their employment as law enforcement officers.

## COUNT I - EXCESSIVE FORCE

29. Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if fully stated herein.

30. The individual Defendants' acts of shooting Landon Eastep were an objectively unreasonable, unnecessary, and excessive use of force that constituted punishment and was not rationally related to a legitimate nonpunitive governmental purpose or was excessive in

relation to such purpose. Put simply, the law enforcement officers on the scene did not need to shoot Mr. Eastep one time – let alone twelve times in the front and the back -- since he posed no actual threat to them or to any third party. Furthermore, assuming *arguendo* that the use of force would have been reasonable in the abstract (which Plaintiff does not admit), the individual Defendants could have used a taser or some other means of non-lethal force. Instead, they gunned him down like a rabid dog.

31. The individual Defendants acted under color of law to deprive Mr. Eastep of his right to be free of excessive force, and this amounts to punishment pursuant to the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983.

32. Mr. Eastep's right to be free from excessive force in the manner described in this Complaint was clearly established at the time the force was used.

33. As a direct and proximate of the acts of the individual Defendants described in this Complaint, Mr. Eastep suffered severe mental and physical pain and suffering and injury prior to his death.

34. The individual Defendants are jointly and severally liable for the excessive force used on Landon Eastep because they acted jointly and in conspiracy with one another to cause the harms described herein, which constituted excessive force.

35. The acts and omissions of the individual Defendants complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

36. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT II - FAILURE TO PROTECT

37. Plaintiff re-alleges and incorporate all paragraphs in this Complaint as if expressly stated herein.

38. The individual Defendants observed or had reason to know that excessive force would be (or was being) used by the other individual Defendants, and as such, they had both the opportunity and the means to prevent the harm from occurring and from continuing to occur.

39. There was sufficient time during the incident described to stop the other individual Defendants from the continued use of excessive force. Nevertheless, not only did each individual Defendant fail to take any action to stop the excessive force, but each individual Defendant also actively participated in the excessive force.

40. The individual Defendants are liable for failing to protect Mr. Eastep from each other's excessive and unnecessary force because they each owed Mr. Eastep a duty of protection against such use of excessive force.

41. The failure to protect Mr. Eastep from excessive force was a violation of his Fourteenth Amendment rights and was clearly established as such at the time.

42. As a direct and proximate result of the individual Defendants' failure to protect Mr. Eastep from excessive force, Mr. Eastep suffered severe harm including pain and suffering and ultimately death.

43. The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional. Moreover, they were performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

44. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT III - 42 U.S.C.§ 1983 - *Monell Liability*

45. Plaintiff hereby incorporates and re-alleges all preceding paragraphs in this Complaint as if expressly stated herein.

46. The City of Nashville's Mayor, City Council, and Police Chief had final policymaking authority regarding the establishment of written policies and training programs governing the conduct of the Metropolitan Nashville Police Department's officers performing policing functions on behalf of the City of Nashville. Moreover, the City of Nashville's Mayor, City Council, and Police Chief established and/or approved of said written policies and training programs governing the conduct of the Metropolitan Nashville Police Department's officers performing policing functions.

47. Similarly, the City of Mt. Juliet's Mayor, City Council, and Police Chief had final policymaking authority regarding the establishment of written policies and training programs governing the conduct of the Mt. Juliet Police Department's officers performing policing functions on behalf of the City of Mt. Juliet (or when the police officers were off duty). Moreover, the City of Mt. Juliet's Mayor, City Council, and Police Chief established and/or approved of said written policies and training programs governing the conduct of the Mt. Juliet Police Department's officers performing policing functions.

48. The unconstitutional policies, practices and customs defined herein were the moving forces behind the death of Mr. Eastep. As such, Mr. Eastep died as a direct and proximate result of the acts and omissions by the City of Nashville and the City of Mt. Juliet.

49. As a direct and proximate result of the acts and omissions described herein, Mr. Eastep and Mr. Eastep's estate, namely his wife and his minor child, have suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

50. As a direct and proximate result of these wrongful acts and omissions, the Plaintiff has suffered a pecuniary loss, including medical and funeral expenses, and other compensatory damages to be determined by the jury.

51. Plaintiff is entitled to recover her costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT IV - 42 U.S.C. § 1983 - *Canton Liability*

52. Plaintiff hereby re-alleges and incorporates all paragraphs in the Complaint as if expressly stated herein.

53. Defendants City of Nashville and/or City of Mt. Juliet failed to properly train or modify its training for Defendant officers and for its other officers, including but not limited to, (1) matters related to the reasonable and appropriate use of force during such encounters and (2) intervention in the excessive force by fellow officers.

54. Using force to effectuate an arrest and intervening in the use of force are usual and recurring situations with which officers of the Metropolitan Nashville Police Department and the Mt. Juilet Police Department encounter on a regular basis. As such, Defendants City of Nashville and/or City of Mt. Juliet were aware of a need for more and different training.

55. Specifically, Defendants City of Nashville and/or City of Mt. Juliet knew that its officers needed training regarding the use of force and de-escalating situations with emotionally distressed individuals.

56. Defendants City of Nashville and/or City of Mt. Juliet were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training. As such, Defendants City of Nashville and/or City of Mt. Juliet were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

57. The failure to train and/or modify training constituted official policies, customs, usages, or practices of Defendants City of Nashville and/or City of Mt. Juliet.

58. Defendants City of Nashville and/or City of Mt. Juliet's respective failures to train and/or modify training were behind the acts and omissions the Defendant officers made toward Mr. Eastep.

59. As a direct and proximate result of Defendants City of Nashville and/or City of Mt. Juliet's acts and omissions, Mr. Eastep suffered injuries, experienced pain & suffering, and ultimately died.

60. As a direct and proximate result of the acts and omissions described herein, Mr. Eastep and, by extension, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

61. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

**COUNT V - STATE LAW CLAIM IN THE ALTERNATIVE FOR NEGLIGENCE**

62. Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if expressly stated herein.

63. In addition to, and in the alternative to, the above federal law claims, Plaintiff asserts claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq*.

64. Defendant City of Nashville, and the City of Mt. Juliet owed a duty of due care to Mr. Eastep to refrain from handling him in a negligent fashion that could, would, and ultimately did cause injury and death to him.

65. The use of excessive force by shooting Landon Eastep execution style was negligent. Moreover, as a direct and proximate result of said negligence, the Plaintiff suffered the loss of consortium, society, companionship, guidance, love and affection and services of Mr. Eastep and is entitled to a judgment against the Defendants for compensatory damages arising as the result of such loss of consortium.

## **PRAYER FOR RELIEF**

1. That process issue to the Defendants and that they be required to answer in the time required by law;

2. That judgment be rendered in favor of the Plaintiff and against the Defendant on all causes of action asserted herein;

3. That Plaintiff be awarded those damages to which she is entitled by proof submitted in this case for the pain and suffering endured by Landon Eastep prior to his death, funeral expenses incurred and the pecuniary value of the life of Landon Eastep as the result of the violation of his rights as guaranteed by the Fourteenth Amendment to the Constitution of the United States;

4. That punitive damages be assessed against the individual Defendants;

5. That the Plaintiff be awarded reasonable expenses including reasonable attorneys fees and expert fees and discretionary costs pursuant to 42 U.S.C § 1988 (b) and (c);

6. That the Plaintiff be awarded all damages allowable for her state cause of action for wrongful death pursuant to Tenn. Code Ann. § 20-5-113 up to the limits provided by Tenn. Code Ann. § 29-20-403;

7. That Defendants be held jointly and severally liable for all damages;

8. That the Plaintiff receive any other further and general relief to which she may be entitled; and

9. That a jury of eight (8) is demanded.

Respectfully Submitted,

/S/ *DAVID J. McKENZIE*
**DAVID J. McKENZIE   #025563**
**The Law Office of David McKenzie**
205 West Commerce Street
Lewisburg, TN 37091
931-359-7305/ 931-359-7307 (fax)
david@davidmckenzielaw.com


/S/ *BARBARA G. MEDLEY*
**BARBARA G. MEDLEY  #014103**
**MEDLEY & SPIVY**
111 West Commerce, Suite 201
Lewisburg, TN 37091
931-359-7555/ 931-359-7556 (fax)
bmedley@medleyandspivy.com