**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

CHELESY EASTEP, as surviving
spouse and next of kin of LANDON
DWAYNE EASTEP,

     Plaintiff,

vs.

METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY;

BRIAN MURPHY, STEVEN CARRICK,
EDIN PLANCIC, SEAN WILLIAMS,
JUSTIN PINKELTON, and JAMES KIDD,
in their individual capacities as officers of the
Metropolitan Nashville Police Department;

CITY OF MT. JULIET, TENNESSEE;

FABJAN LLUKAJ, in his individual capacity
as an officer of the Mt. Juliet Police
Department;

and

REGGIE EDGE, JR, and CHARLES
ACHINGER, in their individual capacities
as officers of the Tennessee Highway Patrol,

     Defendants.

Case No. 3:22-CV-00721

Chief Judge Crenshaw

Magistrate Judge Newbern

*Jury Trial Demanded*

---

**SECOND AMENDED COMPLAINT**

---

COMES NOW the Plaintiff, CHELESY EASTEP, who is the surviving spouse and next

of kin of LANDON EASTEP, and for cause of actions against the Defendants, respectfully

states as follows:

1

## I. Introduction

1.      This Complaint arises out of the death of Landon Dwayne Eastep (*i.e.*, "Mr. Eastep") on the afternoon of January 27, 2022. Mr. Eastep was shot twelve (12) times by officers of the Tennessee Highway Patrol, the Metropolitan Nashville Police Department, and the Mt. Juliet Police Department on the northbound shoulder of Interstate 65 at mile marker 76, approximately ten miles south of downtown Nashville, Tennessee.

2.      The police officers and state troopers who shot Mr. Eastep acted under color of law when they violated his constitutional right to be free from the use of excessive force, thereby causing his brutal death. Furthermore, these law enforcement officers acted in accordance with unconstitutional policies, customs, usages, and/or practices that had been promulgated by the policymakers in their respective jurisdictions.

3.      Mr. Eastep leaves behind an estate with beneficiaries, including his wife and his minor child. Therefore, as Mr. Eastep's surviving spouse, Plaintiff Chelsy Eastep seeks money damages against these law enforcement officers pursuant to 42 U.S.C. § 1983 to redress the deprivation of Mr. Eastep's established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution. Moreover, Plaintiff seeks money damages against the Metropolitan Government of Nashville and Davidson County pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 *(1978)* and its progeny because the unconstitutional policies, customs, usages, and practices of these cities were the moving forces behind the actions of their respective police officers.[1] Plaintiff also seeks her attorney's

---

[1] Plaintiff would otherwise sue the State of Tennessee or the Tennessee Highway Patrol under the *Monell* theory of liability. However, the Eleventh Amendment prohibits suits against the State of Tennessee in Federal Court. See *Pennhurst State Sch. & Hosp. V. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L.Ed. 2d 67 (1984) (holding that Eleventh Amendment prohibits suits against States in Federal Court); *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997)(holding that Federal suits against agencies of the State of Tennessee are prohibited); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986)(noting that Tennessee has not waived immunity to suits under). §1983).

2

fees and costs pursuant to 42 U.S.C. § 1988.

## II.  Jurisdiction and Venue

4.     This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.  It arises out of the execution-style shooting and resultant death of Mr. Eastep on Interstate 65 Northbound at mile marker 76 in Davidson County, Tennessee.  Mr. Eastep died because of the actions and omissions of the Defendants, all of whom were acting under color of state law.

5.     Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343 (a)(3)(4) and § 1367(a). Moreover, this Court has jurisdiction over the Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which gave rise to this cause of action occurred within this district and within one (1) year of the filing of this Complaint and this Court otherwise has jurisdiction.

7.     This action is brought additionally and alternatively pursuant to the Tennessee Governmental Liability Act, T.C.A. § 29-20-101 *et seq.*

## III.  The Parties

8.     At all times relevant hereto and until the time of his death on January 27, 2022, the decedent, Landon Eastep was a citizen of the United States and of the State of Tennessee.

9.     The Plaintiff, Chelesy Eastep, is the surviving spouse and next of kin of Landon Eastep.  Pursuant to Tennessee's wrongful death statutes, Ms. Eastep has a duty to protect the interests of her late husband's estate for the benefit of his minor child.  Ms. Eastep is an adult resident citizen of the City of Tullahoma, County of Coffee, State of Tennessee.

3

10.     Defendant Metropolitan Government of Nashville and Davidson County ("Metro")
is a political subdivision of the State of Tennessee. Pursuant to Metro's Charter, the Metropolitan
Government of Nashville and Davidson County is the proper name of the consolidated governments of
the City of Nashville and the County of Davidson.  Metropolitan Charter § 1.01 ("[C}onsolidation shall
result in the creation and establishment of a new metropolitan government….to be known as 'The
Metropolitan Government of Nashville and Davidson County.'").  At all material times, Defendant
Metro was responsible for the training and supervision of Defendants Brian Murphy, Steven
Carrick, Edin Plancic, Sean Williams, Justin Pinkelton and James Kidd.  At all material times,
Metro delegated to Police Chief John Drake the responsibility to establish and implement
policies, practices, procedures and customs used by Metropolitan Nashville Police Officers
regarding the use of force and the de-escalation of encounters with individuals experiencing
emotional distress or those with a history of mental illness.  At all material times, Metro acted
under color of law.

11.     Defendant Brian Murphy was employed by the Metropolitan Government of
Nashville and Davidson County ("Metro").  At all material times, Defendant Murphy acted
under color of state law by virtue of his authority as a law enforcement officer for the
Metropolitan Nashville Police Department.  He is sued in his individual capacity.

12.     Defendant Steven Carrick was employed by the Metropolitan Government of
Nashville and Davidson County ("Metro").  At all material times, Defendant Carrick acted
under color of state law by virtue of his authority as a law enforcement officer for the
Metropolitan Nashville Police Department.  He is sued in his individual capacity.

13.     Defendant Edin Plancic was employed by the Metropolitan Government of
Nashville and Davidson County ("Metro").  At all material times, Defendant Plancic acted

4

under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

14.     Defendant Sean Williams was employed by the Metropolitan Government of Nashville and Davidson County ("Metro"). At all material times, Defendant Williams acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

15.     Defendant Justin Pinkelton was employed by the Metropolitan Government of Nashville and Davidson County ("Metro"). At all material times, Defendant Pinkelton acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

16.     Defendant James Kidd was employed by the Metropolitan Government of Nashville and Davidson County ("Metro"). At all material times, Defendant Kidd acted under color of state law by virtue of his authority as a law enforcement officer for the Metropolitan Nashville Police Department. He is sued in his individual capacity.

17.     Defendant City of Mt. Juliet, Tennessee is a political subdivision of the State of Tennessee. At all material times, Defendant was responsible for the training and supervision of Defendant Fabjan Llukaj. At all material times, Defendant City of Mt. Juliet, Tennessee delegated to Police Chief John Hambrick the responsibility to establish and implement policies, practices, procedures and customs used by Mt. Juliet Police Department Police Officers regarding the use of force and the escalation of encounters with individuals experiencing emotional distress.

18.     Defendant Fabjan Llukaj was employed by the City of Mt. Juliet, Tennessee and the Mt. Juliet Police Department. At all material times, Defendant Llukaj acted under color

of state law by virtue of his authority as a law enforcement officer for the Mt. Juliet Police Department. He is sued in his individual capacity.

19. Defendant Reggie Edge was employed by the State of Tennessee and the Tennessee Highway Patrol. At all material times, Defendant Edge acted under color of state law by virtue of his authority as a law enforcement officer for the Tennessee Highway Patrol. He is sued in his individual capacity.

20. Defendant Charles Achinger was employed by the State of Tennessee and the Tennessee Highway Patrol. At all material times, Defendant Achinger acted under color of state law by virtue of his authority as a law enforcement officer for the Tennessee Highway Patrol. He is sued in his individual capacity.

## IV. Factual Allegations

21. On January 27, 2022, at approximately 2:00 p.m., thirty-seven (37) year-old Landon Eastep was on the far shoulder of Interstate 65 Northbound at mile marker 76.

22. Defendant Reggie Edge, Jr. of Tennessee Highway Patrol approached Mr. Eastep and began speaking with him. Landon Eastep answered all of Defendant Edge's questions and upon request cooperated and handed him his driver's license. Trooper Edge returned to his vehicle. For several minutes, while Trooper Edge was in his vehicle (observing Landon Eastep), Landon Eastep was clearly vaping, i.e. smoking an electronic cigarette. Landon Eastep takes several draws from the vape, exhales large clouds of white smoke, and puts the vape back in his hoody pocket as Trooper Edge re-approaches him.

23. After exiting his vehicle and returning to Landon Eastep, Trooper Edge told Landon Eastep that he had to come with him. He asked Landon Eastep if he had anything that could poke him or harm him and if he did, that he had to give it to him. When Landon

6

complied and attempted to give Trooper Edge the box cutter he used for his work, Trooper Edge panicked, pulled his service weapon and pointed it at Landon Eastep. This overreaction on the part of Trooper Edge set forth a calamitous chain of events. Landon Eastep, clearly startled and frightened by Trooper Edge's reaction, tried to run away but had nowhere to run.

24.    Defendant Llukaj, an off-duty Mt. Juliet Police Department officer, stopped to assist Defendant Reggie Edge, Jr. Defendant Llukaj, while plain clothed and approaching Landon Eastep from the rear, pointed his pistol at Landon Eastep while unleashing a series of profanity filled commands. These actions lead to further confusion on the part of all parties. Shortly thereafter, Defendants Murphy, Carrick, Plancic, Williams, Pinkelton and Kidd, all from the Metropolitan Nashville Police Department, and Defendant Charles Achinger of the Tennessee Highway Patrol arrived to provide backup support.

25.    Negotiations with Landon Eastep aimed at convincing him to "surrender" continued for approximately thirty (30) minutes. Contrary to reasonable practices, the Defendants with situational command decided to call for an inexplicably excessive number of backup officers to respond to the scene, to draw their firearms, to form a semi-circle firing squad and **create** the danger which ultimately turned fatal. Additionally, no officer present, including those named as a party to this lawsuit, sought to call off the additional officers or reduce the armed presence. Instead of engaging de-escalation procedures, all of the named Defendants escalated the encounter by continuing to point loaded semi-automatic pistols and long guns at Mr. Eastep in an overt show of force. Although Mr. Eastep was emotionally distressed, he did not pose a threat to law enforcement officers, nor did he commit any misdemeanor or felony in their presence, nor did he pose a danger to himself or to the general

7

public. No law enforcement officer came within arm's reach of Mr. Eastep. The overall impression was clear from the overwhelming physical showing of force, Mr. Eastep would not be able to survive this encounter. Under the concept of divided attention, Mr. Eastep was incapable of fully understanding the verbal commands of the Defendants while having the prodigious display of lethality steadily encroaching and encircling him.

26. Negotiations ceased approximately thirty-five minutes into the encounter when three additional, heavily armed military-styled officers carrying long guns, joined the firing line. Landon Eastep then reached for his vape electronic cigarette which has been described by the defense as a "cylindrical metal object." It was not a gun or any other type of weapon that could have posed a threat to the law enforcement officers. This vape was observed being taken in and out of Landon Eastep's pocket by Trooper Edge. Nevertheless, every police officer and state trooper on the scene simultaneously opened fire on Mr. Eastep, killing him. No law enforcement officers were in any way injured in the incident.

27. According to the TBI Investigative Report, there were a total of twenty-five (25) 9 mm cartridges and eight (8) rifle cartridges found at the scene, for a total of at least thirty-three (33) shots fired.

28. According to the TBI Investigative Report, Defendant Edge of the Tennessee Highway Patrol was in possession of a department issued Glock 45 handgun. Defendant Trooper Edge says he fired his weapon at Landon Eastep until the threat was stopped and until Landon Eastep fell to the ground. Upon information and belief, Defendant Trooper Edge fired his weapon at Landon Eastep approximately seven (7) or eight (8) times.

29. According to the TBI Investigative Report, Defendant Achinger of the Tennessee Highway Patrol was in possession of a department issued Glock 45 handgun.

8

Upon information and belief, Defendant Achinger fired his weapon two (2) times at Landon Eastep.

30.     According to the TBI Investigative Report, Defendant Fabjan Llukaj of the Mt. Juliet Police Department was in possession of a his personally owned Glock Model 43 9 mm handgun.  Upon information and belief, Defendant Llukaj fired his weapon one (1) time at Landon Eastep.

31.     According to the TBI Investigative Report, Defendant Pinkelton of the Metro Nashville Police Department was in possession of a department issued Glock 17 9 mm handgun.  Upon information and belief, Defendant Pinkelton fired his weapon three (3) times at Landon Eastep.

32.     According to the TBI Investigative Report, Defendant Carrick of the Metro Nashville Police Department was in possession of a department issued Glock 17 9 mm handgun.   Upon information and belief, Defendant Carrick fired his weapon at Landon Eastep two (2) times.

33.     According to the TBI Investigative Report, Defendant Williams of the Metro Nashville Police Department was in possession of a department issued Glock 17 9 mm handgun.  Upon information and belief, Defendant Williams fired his weapon at Landon Eastep five (5) times.

34.     According to the TBI Investigative Report, Defendant Kidd of the Metro Nashville Police Department was in possession of a department issued Glock 17 9 mm handgun.  Upon information and belief Defendant Kidd fired his weapon four (4) times at Landon Eastep.

35.     According to the TBI Investigative Report, Defendant Edin Plancic of the Metro

Nashville Police Department was in possession of his personally owned BCM AR15 rifle. Upon information and belief, Defendant Plancic fired his personal rifle AR15 rifle approximately six (6) times at Landon Eastep.

36.     According to the TBI Investigative Report, Defendant Murphy of the Metro Nashville Police Department was in possession of his personally owned Colt rifle. Upon information and belief, Murphy fired his personal Colt rifle two (2) times at Landon Eastep.

37.     The final two (2) shots were fired by Defendant Murphy after Mr. Eastep had been shot multiple times and had fallen to the ground, was clearly incapacitated and subdued and after a loud and unmistakable "cease fire" had been yelled by another officer. Within hours of the incident, Defendant Murphy was decommissioned and stripped of his police authority pending an investigation into his actions.

38.     Autopsy findings confirm that Mr. Eastep suffered twelve (12) bullet wounds from his shoulders down to his left leg. Four (4) of the bullets that struck him traveled front to back, while five (5) entered through his back. When he was initially struck by the gunfire, Mr. Eastep fell to the ground, landing on his side with his back towards some of the officers. The bullets fractured numerous bones and two vertebrae. A gunshot wound to his chest hit both his lungs, heart, and aorta. The autopsy report confirmed Landon Eastep also had minor blunt force trauma to his body with several bruises, cuts, and scrapes.

39.      The actions of the individual Defendants as stated above caused extreme, almost unfathomable, pain and suffering to Landon Eastep prior to his death.

40.     All acts of the individual Defendants involved in this incident were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs and usages of the United States of America and the State of Tennessee, under the color of law

and by virtue of their authority as law enforcement officers, and in the course and scope of their employment as law enforcement officers.

41. The Defendant Llukaj was personally involved in the acts and counts herein described by creating an unnecessary display of deadly force by pointing his personal weapon at Landon Eastep, by controlling the unsuccessful dialogue, by using abusive profanity, by stating falsities to Landon Eastep during the confrontation, by firing his weapon at Landon Eastep, by assuming situational command as chief negotiator without adequate training or wearing an officer's uniform and he subverted other officers from attempting to deescalate the confrontation.

42. The Defendant Brian Murphy had a longstanding disciplinary history as a Metro Police Officer including multiple incidents of negligent operation of police vehicles and a suspension for violation of Use of Force Policy. On October 23, 2018, Defendant Murphy received a written reprimand for his personal behavior for displaying "The Punisher" emblem after receiving a citizen complaint of seeing "The Punisher" displayed as a sign of condoning vigilante justice. Specifically, the complainant stated he was familiar with "The Punisher" character and "The Punisher" is about torture, coercion, kidnapping and murder in effort to fight crime.

### Metro's Notice of Prior Incidents of Excessive Force

43. Metro had notice of an incident wherein Metro Officer used excessive force against Russell Fromuth for which Mr. Fromuth filed suit against Metro alleging that during his detention officers kicked him, administered several blows with the butt of a shotgun and drug him by his feet toward the patrol car. Fromuth v. Metropolitan Government of Nashville, 158 F. Supp. 2d, 787 (M.D. Tenn. 2001).

44.    Metro had notice of a 2005 incident wherein Metro Officers used excessive force against Patrick Lee who, after getting too close to a concert stage, was beaten, kicked, struck numerous times with batons and electrically shocked with a Taser stun gun approximately 19 times causing the death of Patrick Lee.  Bud Lee and Cindy Lundman, as next friend and natural parents of Patrick Lee v. Metropolitan Gov't. of Nashville, et. al., Case No. 3:06-cv-00108, United States District Court for the Middle District of Tennessee, Nashville Division.

45.    According to media sources, from 2013 until 2021, Metro Police Department had nineteen (19) killings by police, and from 2013-2017, there were 2,537 civilian complaints of police misconduct.  With regard to the use of deadly force during this time period, 5% of the victims were unarmed and 26% allegedly did not have a gun.  As to the use of force complaints, 20% were ruled in favor of civilians.  Https://policescorecard.org/tn/police-dept-nashville-metro.

46.    Metro had notice of a July 26, 2018 incident wherein Daniel Hambrick was shot and killed by Metro Officer Andrew Delke after he shot Hambrick in the back four (4) times while running away.  The released video footage showed that Hambrick never reached for his weapon and was running for his life when Delke shot him.  *WPLN Reporter Samantha Max's Podcast "Deadly Forcing,"* released January 2020.

47.    According to media sources, Metro Nashville Police Department has continued to use excessive force and failed to comply with the de-escalation tactics, leading to two (2) recent shootings, one (1) fatal.  Specifically, on March 13, 2021, Metro Police were called on a Goodlettsville woman, Melissa Wooden, who threatened suicide before charging at police officers with a pick-axe.  Wooden was shot but survived.  In a separate incident, Nika Holbert

12

resisted arrest before shooting at a police officer, who in turn, fatally shot her. According to media sources, the Metro Nashville Police Department needs to reinforce the need for police officers to follow procedures that de-escalate and avoid the use of excessive force when dealing with citizens, especially those with a history of mental illness. https://tennesseelookout.com/briefs/8491.

48.     Metro had notice of a 2011 incident involving Michael Minnick who was shocked with a stun gun and arrested. After being taken to the hospital and restrained to a bed, Minnick was sprayed in the face with a chemical spray, forcefully taken to the floor and struck in the face until he stopped breathing, stopped moving, defecated on himself and began turning blue from asphyxiation. Minnick v. Metro Gov't. of Nashville, Case No. 3:12-cv-0524 (M.D. 10. August 4, 2014). It was alleged that Metro had a duty to protect Minnick's life and health, to have its employees refrain from conduct that created an unreasonable risk of injury or death, to adequately train its employees and to refrain from the use of deadly force except where reasonably necessary to protect the health and safety of the officers and/or the public. It was further alleged that Metro breached these duties because it failed to protect Minnick from the unreasonable and excessive use of deadly force by the DSCO officers and because it failed to adequately train and supervise its employees in regard to the proper use of force. Id.

## COUNT I - EXCESSIVE FORCE

49.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if fully stated herein.

50.     The conduct by the officers identified in this Count and described herein constituted excessive and deadly force in violation of the Fourth Amendment of the United

States Constitution, and clearly established law.

51.     The individual Defendants' acts of shooting Landon Eastep were an objectively unreasonable, unnecessary, and excessive use of force that constituted punishment and was not rationally related to a legitimate nonpunitive governmental purpose or was excessive in relation to such purpose. Put simply, the law enforcement officers on the scene did not need to shoot Mr. Eastep one time – let alone twelve times in the front and back – since he posed no actual threat to them or to any third party. Furthermore, assuming arguendo that the use of force would have been reasonable in the abstract (which Plaintiff does not admit), the individual Defendants could have used a taser or some other means of non-lethal force. Instead, they gunned him down like a rabid dog.

52.     The individual Defendants acted under color of law to deprive Mr. Eastep of his right to be free of excessive force, and this amounts to punishment pursuant to the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. § 1983.

53.     Mr. Eastep's right to be free from excessive force in the manner described in this Complaint was clearly established at the time the force was used.

54.     As a direct and proximate cause of the acts of the individual Defendants described in this Complaint, Mr. Eastep suffered severe mental and physical pain and suffering and injury prior to his death.

55.     The individual Defendants are jointly and severally liable for the excessive force used on Landon Eastep because they acted jointly and in conspiracy with one another to cause the harms described herein, which constituted excessive force.

56.     The acts and omissions of the individual Defendants complained of herein were unlawful, conscious, shocking and unconstitutional and performed maliciously,

14

recklessly, fraudulently, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

57. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT II - FAILURE TO PROTECT

58. Plaintiff re-alleges and incorporate all paragraphs in this Complaint as if expressly stated herein.

59. The individual Defendants observed or had reason to know that excessive force would be (or was being) used by the other individual Defendants, and as such, they had both the opportunity and the means to prevent the harm from occurring and from continuing to occur.

60. There was sufficient time during the incident described to stop the other individual Defendants from the continued use of excessive force. Nevertheless, not only did each individual Defendant fail to take any action to stop the excessive force, but each individual Defendant also actively participated in the excessive force.

61. The individual Defendants are liable for failing to protect Mr. Eastep from each other's excessive and unnecessary force because they each owed Mr. Eastep a duty of protection against such use of excessive force.

62. The failure to protect Mr. Eastep from excessive force was a violation of his Fourteenth Amendment rights and was clearly established as such at the time.

63. As a direct and proximate result of the individual Defendants' failure to protect Mr. Eastep from excessive force, Mr. Eastep suffered severe harm including pain and suffering and ultimately death.

15

64. The actions and omissions of the individual Defendants complained of herein were unlawful, conscience-shocking, and unconstitutional. Moreover, they were performed maliciously, recklessly, intentionally, willfully, wantonly, and in such a manner as to entitle the Plaintiff to an award of punitive damages.

65. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT III - 42 U.S.C.§ 1983 - *Monell Liability*

66. Plaintiff hereby incorporates and re-alleges all preceding paragraphs in this Complaint as if expressly stated herein.

67. Metro, acting by and through its policy makers, had knowledge of Metropolitan Nashville Police Department's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens federal rights.

68. Metro, acting by and through its policy makers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from Metropolitan Nashville Police Department's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same. On or prior to January 27, 2022, Metro, with deliberate indifference to the rights of arrestees, detainees and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns or practices that failed to provide for the safety of arrestees, detainees, and the like including but not limited to the use of excessive force.

69. Metro, acting by and through its policy makers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from Metropolitan Nashville Police Department's unconstitutional patterns and practices and was deliberately

16

indifferent to and/or tacitly authorized the same. On or prior to January 27, 2022, Metro, with deliberate indifference to the rights of arrestees, detainees and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns or practices that failed to provide for the safety of arrestees, detainees, and the like including but not limited to following procedures that de-escalate and avoid the use of excessive force when dealing with citizens, especially with the history of mental illness.

70.     Metro, acting by and through its policy makers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from Metropolitan Nashville Police Department's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same. On or prior to January 27, 2022, Metro, with deliberate indifference to the rights of arrestees, detainees and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns or practices that condoned and required officers to turn a blind eye to and not to intervene with the use of excessive force by Metro officers.

71.     Because of the prior instances of unconstitutional conduct demonstrating that Metro has ignored a history of abuse, Metro was on notice that the training in the areas of excessive force and de-escalation was deficient and likely to cause injury.

72.     On or prior to January 27, 2022, Metro, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted or ratified a number of customs, patterns or practices that shall be further identified in discovery.

73.     Metro, with deliberate indifference to the rights of arrestees, detainees, and the

17

like, continued to employ Brian Murphy despite knowledge of his unconstitutional and repeated improper conduct.

74.     Metro had final policymaking authority regarding the establishment of written policies and training programs governing the conduct of the Metropolitan Nashville Police Department's officers performing policing functions on behalf of the City of Nashville. Moreover, Metro established and/or approved of said written policies and training programs governing the conduct of the Metropolitan Nashville Police Department's officers performing policing functions.

75.     The unconstitutional policies, practices and customs defined herein were the moving forces behind the death of Mr. Eastep. As such, Mr. Eastep died as a direct and proximate result of the acts and omissions of Metro.

76.     As a direct and proximate result of the acts and omissions described herein, Mr. Eastep and Mr. Eastep's estate, namely his wife and his minor child, have suffered compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

77.     As a direct and proximate result of these wrongful acts and omissions, the Plaintiff has suffered a pecuniary loss, including medical and funeral expenses, and other compensatory damages to be determined by the jury.

78.     Plaintiff is entitled to recover her costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

**COUNT IV - 42 U.S.C. § 1983 - *Canton Liability***

79.     Plaintiff hereby re-alleges and incorporates all paragraphs in the Complaint as if expressly stated herein.

80.     Defendant Metro failed to properly train or modify its training for Defendant officers and for its other officers, including but not limited to, (1) matters related to the reasonable and appropriate use of force during such encounters and (2) intervention in the excessive force by fellow officers.

81.     Using force to effectuate an arrest and intervening in the use of force are usual and recurring situations with which officers of the Metropolitan Nashville Police Department encounter on a regular basis.  As such, Defendant Metro was aware of a need for more and different training.

82.     Specifically, Defendant Metro knew that its officers needed training regarding the use of force and de-escalating situations with emotionally distressed individuals. Defendant Metro was aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.  As such, Defendant Metro was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

83.     The failure to train and/or modify training constituted official policies, customs, usages, or practices of Defendant Metro.

84.     Defendant Metro's failure to train and/or modify training were behind the acts and omissions the Defendant officers made toward Mr. Eastep.

85.     As a direct and proximate result of Defendant Metro's acts and omissions, Mr. Eastep suffered injuries, experienced pain & suffering, and ultimately died.

86.     As a direct and proximate result of the acts and omissions described herein, Mr. Eastep and, by extension, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

19

87.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. § 1988.

## COUNT V - STATE LAW CLAIM IN THE ALTERNATIVE FOR NEGLIGENCE

88.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if expressly stated herein.

89.     In addition to, and in the alternative to, the above federal law claims, Plaintiff asserts claims pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.*

90.     Defendant City of Nashville, and the City of Mt. Juliet owed a duty of due care to Mr. Eastep to refrain from handling him in a negligent fashion that could, would, and ultimately did cause injury and death to him.

91.     The use of excessive force by shooting Landon Eastep execution style was negligent. Moreover, as a direct and proximate result of said negligence, the Plaintiff suffered the loss of consortium, society, companionship, guidance, love and affection and services of Mr. Eastep and is entitled to a judgment against the Defendants for compensatory damages arising as the result of such loss of consortium.

## PRAYER FOR RELIEF

1.     That process issue to the Defendants and that they be required to answer in the time required by law;

2.     That judgment be rendered in favor of the Plaintiff and against the Defendant on all causes of action asserted herein;

3.     That Plaintiff be awarded those damages to which she is entitled by proof

submitted in this case for the pain and suffering endured by Landon Eastep prior to his death, funeral expenses incurred and the pecuniary value of the life of Landon Eastep as the result of the violation of his rights as guaranteed by the Fourth and Fourteenth Amendment to the Constitution of the United States;

4. That punitive damages be assessed against the individual Defendants;

5. That the Plaintiff be awarded reasonable expenses including reasonable attorneys' fees and expert fees and discretionary costs pursuant to 42 U.S.C § 1988 (b) and (c);

6. That the Plaintiff be awarded all damages allowable for her state cause of action for wrongful death pursuant to Tenn. Code Ann. § 20-5-113 up to the limits provided by Tenn. Code Ann. § 29-20-403;

7. That Defendants be held jointly and severally liable for all damages;

8. That the Plaintiff receive any other further and general relief to which she may be entitled; and

9. That a jury of eight (8) is demanded.

Respectfully Submitted,


/S/ DAVID J. McKENZIE
**DAVID J. McKENZIE   #025563**
**The Law Office of David McKenzie**
205 West Commerce Street
Lewisburg, TN 37091
931-359-7305/ 931-422-5154 (fax)
david@davidmckenzielaw.com


/S/ BARBARA G. MEDLEY
**BARBARA G. MEDLEY  #014103**
**MEDLEY & SPIVY**
111 West Commerce, Suite 201
Lewisburg, TN 37091
931-359-7555/ 931-359-7556 (fax)

21

[bmedley@medleyandspivy.com](mailto:bmedley@medleyandspivy.com)

**Certificate of Service**

I hereby certify that on the ___day of May, 2023, that a true and accurate copy of the foregoing has been served via the Court's electronic filing system to:

Melissa Roberge, Senior Counsel
Michael R. Dohn, Asst. Metropolitan Attorney
The Department of Law of the Metropolitan
Government of Nashville and Davidson
County
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, TN 37219

Meghan Murphy
Amanda Shanan Jordan
Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202-0207

Bob M. Burns
Samantha A. Burnett
Howell & Fisher, PLLC
3310 West End Avenue, Suite 550

/s/ David J. McKenzie