IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHELESY EASTEP, as surviving spouse and next of kin of LANDON DWAYNE EASTEP, <br><br> *Plaintiff*, <br><br> v. <br><br> METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY; <br><br> BRIAN MURPHY, STEVEN CARRICK, EDIN PLANCIC, SEAN WILLIAMS, JUSTIN PINKELTON, and JAMES KIDD, in their individual capacities as officers of the Metropolitan Nashville Police Department; <br><br> CITY OF MT. JULIET, TENNESSEE; <br><br> FABJAN LLUKAJ, in his individual capacity as an officer of the Mt. Juliet Police Department; <br><br> and <br><br> REGGIE EDGE, JR. and CHARLES ACHINGER, in their individual capacities as officers of the Tennessee Highway Patrol, <br><br> *Defendants*. | Case No. 3:22-CV-721 <br><br> Chief Judge Crenshaw <br> Magistrate Judge Newbern <br><br> JURY DEMAND |

---

**DEFENDANT FABJAN LLUKAJ'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Officer Fabjan Llukaj ("Officer Llukaj") submits this memorandum of law in support of his Motion to Dismiss the claims brought against him by Plaintiff Chelesy Eastep. Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983 against numerous defendants, including Officer Llukaj, for excessive force and failure to protect.

1

However, Plaintiff has failed to state a claim upon which relief can be granted and Officer Llukaj is entitled to qualified immunity. Therefore, the claims against Officer Llukaj should be dismissed.

I.   **PROCEDURAL HISTORY**

Plaintiff is the surviving spouse and next of kin of the deceased, Mr. Landon Eastep. On September 15, 2022, Plaintiff filed this lawsuit against the Metropolitan Government of Nashville and Davidson County ("Metro"), the City of Mt. Juliet ("City"), and nine police officers in their individual capacities. The defendant officers included six Metro police officers (Murphy, Carrick, Plancic, Williams, Pinkelton, and Kidd); one City police officer (Officer Llukaj); and two Tennessee Highway Patrol officers (Edge and Achinger). (DE 1). Plaintiff's claims were brought pursuant to 42 U.S.C § 1983 for alleged civil rights violations against Mr. Eastep. (*Id*. at ¶ 29-61). The claims against the individual officers included excessive force pursuant to the Fourth Amendment and failure to protect pursuant to the Fourteenth Amendment.

On March 6, 2023, Plaintiff filed an Amended Complaint. (DE 46). The Amended Complaint remained the same regarding the claims against the individual officers. (*Id*. at ¶ 36-52). At the end of March and early April 2023, all Defendants, including Defendant Llukaj, filed motions to dismiss the Amended Complaint. On May 8, 2023, Plaintiff motioned for leave to file a second amended complaint. Throughout May 2023, briefing continued related to the Defendants' motions to dismiss, while Plaintiff's motion for leave was pending.

On July 3, 2023, the Court granted Plaintiff's motion for leave to file the second amended complaint and a subsequent order was filed to terminate the Defendants' motions to dismiss. (DE 101-102). Defendants were ordered to file responsive pleadings to the Second Amended Complaint (DE 72). The claims against the individual officers contained in the Second Amended Complaint

have remained the same and include excessive force pursuant to the Fourth Amendment and failure to protect pursuant to the Fourteenth Amendment. (*Id*. at ¶ 49-65).

Officer Llukaj now files this Memorandum of Law and accompanying Motion to Dismiss to dismiss all claims against him contained in the Second Amended Complaint.

## II. STATEMENT OF FACTS[1]

During the afternoon hours of January 27, 2022, Landon Eastep ("Mr. Eastep") was on the shoulder of Interstate 65. (DE 72, Second Amended Complaint, ¶ 21). Tennessee Highway Patrol Trooper Reggie Edge, Jr. ("Trooper Edge") approached Mr. Eastep and began speaking with him. (*Id*. at ¶ 22). There was a several minute interaction between Trooper Edge and Mr. Eastep on the shoulder of the interstate. (*Id*. at ¶ 22-23). During that time, Mr. Eastep pulled out a box cutter and Trooper Edge subsequently drew his duty weapon. (*Id*. at ¶ 23).[2]

Mt. Juliet Police Officer Fabjan Llukaj ("Officer Llukaj") was off duty and driving on I-65. (*Id*. at ¶ 24). He was armed with a personal handgun and stopped to assist Trooper Edge. (*Id*. at ¶ 24). When Officer Llukaj stopped, Mr. Eastep was armed with a boxcutter and Trooper Edge had his duty weapon drawn. (*Id*. at ¶ 23-24; Exhibit 1, Edge Dashcam Video at 5:36-5:54). Officer Llukaj announced that he was "a cop" while walking towards Trooper Edge and Mr. Eastep. (Ex. 1, Edge Dashcam Video, at 5:54-5:58). As Officer Llukaj approached closer, Trooper Edge was giving numerous commands to "put it down now" and "get on the ground", which Mr. Eastep blatantly failed to do. (*Id*. at 5:58-6:48).

---

[1] Defendant Llukaj relies on the three video exhibits previously filed manually pursuant to the Defendants' Joint Notice of Filing (DE 54 and 96).
[2] There are numerous facts leading up to the moment Mr. Eastep pulled out the box cutter on Trooper Edge. These facts are partially detailed/alleged in the Second Amended Complaint (DE 72 at ¶ 22-23) and fully detailed in the video manually filed as Exhibit 1- Edge Dashcam Video (*see* DE 54, Joint Notice of Filing). These facts are not provided in Defendant Llukaj's Memorandum of Law because he did not personally witness or have knowledge of these facts at the time of the incident.

During the next few minutes, Officer Llukaj and Trooper Edge continually gave Mr. Eastep commands and pleaded with him to "please drop the knife". (*Id*. at 6:00-10:23). Mr. Eastep never complied. (*Id*. at 6:00-10:23). Additional law enforcement officers began arriving on scene in response to Trooper Edge's radio traffic that he had a man with a knife. (*Id*. at 7:20-7:27; 10:23).

Officer Llukaj continued to communicate with Mr. Eastep for approximately 30 more minutes. (*Id*. at 10:23-42:48; DE 72 at ¶ 25). Other officers also gave commands. (*Id*.). However, Officer Llukaj built a rapport with Mr. Eastep and used that rapport to try and get Mr. Eastep to surrender. (*Id*. at 10:23-42:48; DE 72 at ¶ 25).

During those 30 minutes, Mr. Eastep remained armed with the knife in his left hand and officers became concerned about an item in his pocket where his right hand was. (*Id*. at 15:53-16:25). The entire time Officer Llukaj was communicating with Mr. Eastep, there were continuous commands focused on getting him to drop the box cutter from his left hand and removing his right hand from his pocket. (*Id*. at 10:23-42:48). Officer Llukaj told Mr. Eastep to get his hand out of his pocket and show that he did not have another weapon. (Ex. 2, Kidd bodycam video, at 12:55-27:49). Officer Llukaj also made countless pleas with Mr. Eastep, which included statements like, "Please, just drop it brother"; "I guarantee that I will have an ambulance here to help you out"; "I care about you"; and "help me help you". (Ex. 2 at 26:50-27:02 and 27:02-27:19).

However, Mr. Eastep <u>never</u> dropped the knife from his left hand, and he <u>refused</u> to remove his right hand from his jacket pocket. (Ex. 2 at 0:00-28:01).

After 30-35 minutes of negotiations, Mr. Eastep pulled a cylindrical metal object out of his right pocket, stood in a shooting stance, and pointed the object at Officer Llukaj and other officers. (DE 72 at ¶ 26; Ex. 1 at 42:45-43:00; Ex. 2 at 27:49-28:01; Ex. 3, Williams Bodycam video, at 27:10-27:30). Multiple officers fired their weapons in response, including Officer Llukaj who fired

4

one round. (DE 72 at ¶ 30; Ex. 1 at 42:45-43:00; Ex. 2 at 27:49-28:01; Ex. 3 at 27:10-27:30). Mr. Eastep was hit by several rounds and died from the injuries. (DE 72 at ¶ 26).

## III. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the Complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007), the Supreme Court disavowed the oft-quoted Rule 12(b)(6) standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which had previously declared that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Instead, the *Twombly* Court held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

### B. Qualified Immunity

As a law enforcement officer sued under 42 U.S.C. § 1983, Officer Llukaj is entitled to assert the defense of qualified immunity. Defendants in their individual capacities enjoy qualified immunity from suit under § 1983 "insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Court is required to employ a two-part test to determine whether a governmental official is entitled to qualified immunity. *Rieves v. Town of Smyrna, Tennessee*, 959 F.3d 678, 695 (6th Cir. 2020). It must consider (1) whether the official's conduct

violated a constitutional right, and (2) whether that constitutional right was clearly established. *Pearson* at 236. However, the Court may consider these two prongs in either order. *Id.*

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). The plaintiff then bears the burden of showing that the defendant is not entitled to the defense of qualified immunity. *Id.* (see also *Rieves* at 695). For a plaintiff to survive the defense of qualified immunity, the plaintiff must show that the defendant violated a constitutional right and that the right was clearly established. *Radvansky v. City of Olmsted Falls et al.*, 395 F.3d 291, 302 (6th Cir. 2005). The absence of any element means that the court must dismiss plaintiff's claims as a matter of law. *Id.*

When qualified immunity is raised as a defense in a motion to dismiss, courts can consider video recordings. *Bell v. City of Southfield, Michigan*, 37 F.4th 362 (6th Cir. 2022); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017). The Sixth Circuit has explained the importance of using "videos at the motion-to-dismiss stage" in qualified immunity cases. *Id.* at 364. The court stated,

> Qualified immunity isn't just a defense to liability – it's immunity from the costs and burdens of suit in the first place. If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate.

*Id.* (internal citations omitted). The Court continued this statement by stating, "So when uncontroverted video evidence easily resolves a case, we honor qualified immunity's principles by considering the video. *Id*.

## IV. LAW AND ARGUMENT

### A. Officer Llukaj is entitled to qualified immunity because Plaintiff cannot establish that he used excessive force in violation of the Fourth Amendment (Count I).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. A police officer's use of deadly force is a seizure under the Fourth Amendment, so it must be reasonable. *Tennessee v. Garner*, 475 U.S. 1 (1985). Deadly force may be used if an officer has probable cause to believe that a suspect poses a threat of serious bodily harm to the officer or others. *Id.* A suspect need not be armed with a firearm to justify the use of deadly force. *City & Cnty. of San Francisco, Calif. v. Sheehan*, 135 S.Ct. 1765 (2015)(suspect armed with knife). In fact, the Sixth Circuit has stated that "[w]hen a person aims a weapon in a police officer's direction, that officer has an objectively reasonable basis for believing that the person poses a significant risk of serious injury or death." *Greathouse v. Couch*, 433 Fed.Appx. 370, 373 (6th Cir. 2011) (unpublished).

The issue of whether a police officer used appropriate force is analyzed under the Fourth Amendment's objective reasonableness standard. In *Graham v. Connor*, 490 U.S. 386, 388 (1989), the Supreme Court held that the reasonableness of the use of force must be judged from the perspective of an officer on the scene, rather than "with the 20/20 vision of hindsight." Further,

> "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."

*Graham* at 396-97. According to *Graham*, the key timeframe to consider is what the officers knew and saw at the time.

The Sixth Circuit also takes a "segmented approach" to excessive force cases under the Fourth Amendment, focusing on the moments immediately preceding the use of force, rather than the adequacy of planning or time spent thinking through the problem. *Rucinski v. County of Oakland*, 655 Fed. Appx. 338, 342 (6th Cir. 2016)(see also *Reich v. City of Elizabethtown*,

7

*Kentucky*, 945 F.3d 968, 978 (6th Cir. 2019)(Courts should not consider "the poor planning or bad tactics that might have created the circumstances that led to the use of force.")).

A court must consider three factors to determine the reasonableness of use of force, which include the following: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. All three factors must be considered, and no single factor is dispositive.

1. *The Severity of the Crime at Issue*

As can be seen in the relied upon videos, the incident escalated from simply moving Mr. Eastep off the interstate to Mr. Eastep pulling a box cutter out of his pocket and making movements towards Trooper Edge with it. When Officer Llukaj drove upon the scene on the interstate while off duty, he was a first-hand witness to a serious crime being committed. Mr. Eastep's actions easily established probable cause for the existence of Assault (T.C.A. 39-13-101) and, even more severe, Aggravated Assault (T.C.A. 39-13-102), since it involved a deadly weapon. Additionally, Mr. Eastep was arguably in the process of committing an Assault Against a First Responder (T.C.A. § 39-13-116). Mr. Eastep was, without question, committing a severe and dangerous crime against officers.

2. *The Immediate Threat to all Involved*

Mr. Eastep was an immediate threat to every officer involved with contact with him, especially Officer Llukaj who was directly in front of Mr. Eastep and attempting to communicate with him. One can deduce, from his being armed, that he either planned to use his weapons as instruments of threatening force—by displaying them—or for resisting any attempt to arrest him. From the time Trooper Edge attempted to pat him down, up until the time of the shooting, Mr.

Eastep never gave any indication of surrender or compliance. And, his actions in arming himself and refusing every command to give up, show he had no intent to end the episode peacefully.

Further, Mr. Eastep's encounter with the officers did not take place in an isolated, deserted area of Nashville. Rather, officers encountered Mr. Eastep on a busy interstate, I-65 North near mile marker 76, in the middle of the afternoon. As can be seen in the videos, there were numerous bystanders in the direct vicinity of Mr. Eastep.

When Mr. Eastep had a knife in one hand, pulled out a cylindrical metal object from the hand he had been refusing to remove from his pocket, engaged in a shooting stance, and pointed the object at Officer Llukaj, Officer Llukaj reasonably believed that his life, the lives of multiple officers, and the lives of other bystanders were all in immediate danger.

3. *Active Resistance*

Although Mr. Eastep had not been told he was under arrest, there is little doubt that he was actively resisting officers' lawful commands who were trying to place him into custody. His resistant acts include, but are not limited to, the following:

- Pulling away from Trooper Edge who was attempting to pat him down;
- Pulling out a box cutter in response to Trooper Edge attempting to pat him down;
- Moving toward Trooper Edge with a box cutter;
- Ignoring numerous commands to drop the knife;
- Ignoring numerous commands to remove his right hand from his pocket; and
- Ignoring commands to surrender.

The Sixth Circuit has found "active resistance" for conduct such as where a suspect threatens officers, disobeys officers, or refuses to be handcuffed. *Thomas v. City of Waspointe*, WL 4461072 at 2 (6th Cir. 2017). In fact, verbal hostility alone may constitute active resistance

9

where it is "the final straw in a series of consciously-resistive acts." *Eldride v. City of Warren*, 533 Fed. App'x 529, 534 (6th Cir. 2013).

In weighing the undisputable facts shown in the video evidence against all three *Graham* factors, Mr. Eastep was engaged in serious criminal activity; he inarguably posed an immediate threat to all officers and bystanders; and Mr. Eastep repeatedly and actively resisted officers. Mr. Eastep introduced deadly force into the equation and, he unfortunately, dictated the officers' response. It was reasonable and constitutional for Officer Llukaj to respond to a deadly force threat with deadly force, as officers are trained to do. Officer Llukaj is entitled to qualified immunity because Plaintiff cannot establish an excessive force claim against him.

> **B. Officer Llukaj is entitled to qualified immunity because Plaintiff cannot establish that he failed to protect Mr. Eastep in violation of the Fourteenth Amendment (Count II).**

Officer Llukaj is entitled to qualified immunity under Count II because Officer Llukaj did not fail to protect Mr. Eastep. This argument is simple and clear cut. A claim for failure to protect requires a Plaintiff to "sufficiently allege 'that the officers "'(1) observed or had reason to know that [the constitutional harm was occurring], and (2) had both the opportunity and the means to prevent the harm from occurring." ' *Holloran v. Duncan*, 92 F. Supp. 3d 774, 793 (W.D. Tenn. 2015) (*quoting Sheffey v. City of Covington*, 564 Fed.Appx. 783, 793 (6th Cir. 2014)." *Bunkley v. City of Detroit*, 16-CV-11593, 2017 WL 4005919, at *4 (E.D. Mich. Sept. 12, 2017), *aff'd in part, appeal dismissed in part sub nom. Bunkley v. City of Detroit, Michigan*, 902 F.3d 552 (6th Cir. 2018).

As clearly shown in (1) Officer Llukaj's argument above; (2) the videos capturing the entire incident; and (3) the arguments presented by the other individual officers in their motions to dismiss, the alleged constitutional violation of excessive force was not committed against Mr.

Eastep by any of the individual officers. Plaintiff has not alleged that any other constitutional violation occurred, and Officer Llukaj had no reason to believe that one was occurring.

Even assuming arguendo that a constitutional harm did occur, Officer Llukaj did not have a reasonable chance to intervene and stop other officers from using deadly force. *Burgess v. Fischer*, 735 F.3d 462, 470 (6th Cir. 2013)(no duty to intervene because there was not enough time within 10 seconds, for anyone to intervene). Less than 10 seconds existed between the time Mr. Eastep began pulling the object out of his pocket and the final shot being fired. (Ex. 1 at 42:45-43:00).

Without a constitutional harm occurring or Officer Llukaj having an opportunity to intervene, Officer Llukaj cannot be liable for a failure to protect claim. Therefore, Officer Llukaj is entitled to qualified immunity.

### C. The Law was not Clearly Established that Officer Llukaj's Actions were Unlawful (Count I and II).

Qualified Immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights." *Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The Supreme Court has held that while it is not necessary that a court adjudicate the same exact circumstances, there must be a close enough fit between the events in the instant case and the preexisting law that the unlawfulness of the officer's conduct be apparent. *Anderson* at 639-40. The "existing precedent must have placed the statutory or constitutional question beyond

debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012)(See also *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Sixth Circuit has recently stated,

> [This is] especially true in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer confronts. Thus, in excessive force cases, qualified immunity shields the officers unless existing precedent squarely governs the specific facts at issue.

*Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968, 981 (6th Cir. 2019), cert. denied, 141 S. Ct. 359 (2020) (internal quotations omitted).

Plaintiff cannot provide any case law that would have put Officer Llukaj on notice that his actions were in violation of Mr. Eastep's constitutional rights as it relates to excessive force and a failure to protect.

In fact, the case law in the Sixth Circuit in January 2022, concerning police use of deadly force, supported Officer Llukaj's actions. A few of those cases are detailed below:

1. *Pollard v. City of Columbus, Ohio*, 780 F.3d 395 (6th Cir. 2015)

A suspect was shot and killed by officers after leading them on a pursuit. *Id*. at 398. During the pursuit, the suspect crashed the vehicle and officers surrounded the suspect vehicle. *Id*. Officers gave commands for the suspect to show his hands. *Id*. The suspect failed to comply and instead reached down into his car, moved his hands into a shooting posture, and pointed his hands at the officers. *Id*. Officers then fatally shot the officers. *Id*.

A suit was filed under § 1983 claiming excessive force. *Id.* The Sixth Circuit held that the officers clearly had "probable cause to believe that [the suspect] threatened their safety." *Id*. Importantly, the Sixth Circuit heavily focused on the moments immediately before the shots were fired, which included a "dramatic change in circumstances – after [the suspect] . . . made gestures suggesting he had a weapon." *Id*. at 404.

### 2. *Rhodes v. McDannel*, 945 F.2d 117 (6th Cir. 1991)

The girlfriend of James West called police reporting that West was chasing her around the home with a machete. *Id*. at 118. Two deputies went to the home, his girlfriend escorted the officers into the living room, and West then entered the room and advanced toward her and the officers with machete in hand. *Id.* The officers ordered West to drop the knife several times, but he refused. *Id*. When he advanced within 4-6 feet of them, with the machete raised, a deputy fired his weapon and killed West. *Id.*

West's Estate filed suit under § 1983 claiming excessive force. *Id.* at 119. The district court granted summary judgment for the officers, and the Sixth Circuit affirmed, finding that the deputy was justified in using deadly force against a suspect brandishing a knife after the suspect did not comply with repeated commands to drop the knife and approached within 4-6 feet of the officers with the knife raised. *Id.* at 118; 120.

### 3. *Chappel v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009)

City police detectives investigated a robbery and suspected Brandon McCloud, a minor of age fifteen, was the perpetrator. *Id.* at 904. The officers obtained a warrant to search McCloud's home and spotted McCloud hiding in a bedroom closet. *Id*. at 904-905. With their flashlights and firearms pointed at him, they ordered him to come out and show his hands. *Id.* He came out holding a knife with the blade pointing upward, ignored their commands to drop the weapon, and moved slowly toward them. *Id.* at 905; 910. The officers shot McCloud ten times, killing him. *Id.*

McCloud's estate sued the City and both detectives under § 1983 for alleged Fourth Amendment violations. *Id.* The officers moved for summary judgment on the basis of qualified immunity, which was denied by the trial court, but the Sixth Circuit reversed, stating as follows:

> At best, plaintiff has presented grounds for speculation that defendants misread her grandson's innocent intentions when he came out of the closet and advanced

13

towards them with knife in hand. Yet, qualified immunity protects officers from liability for mistakes of law and fact. Plaintiff had failed to adduce facts demonstrating that defendants, in potentially misinterpreting McCloud's actions, were plainly incompetent or deliberately violated his rights when they acted in self-defense.

*Id.* at 916. The clearly established law, per Chappell, was that police officers who shoot a 15-year-old minor armed with a knife in his own bedroom ten times is an appropriate use of deadly force, even if the minor made no verbal threats to the officers and did not wave the knife in a threatening manner. *Id*. at 911.

### 4. *Reich v. City of Elizabethtown, Kentucky*, 945 F.3d 968 (2019)

A fiancé was driving Blough to a mental health facility when Blough got out of the vehicle with a knife. *Id.* at 973. Blough walked through traffic and into a residential neighborhood. *Id.* Police intervened after he refused to listen to his fiancé to get back in the car. *Id.* Ultimately, the officers ended up firing three shots, killing Blough, after he refused commands to drop the knife. *Id.*

His fiancé and estate sued for excessive force. The Sixth Circuit affirmed the grant of summary judgment pursuant to qualified immunity. *Id.* Even though Blough was shot when he was only 6-12 feet away from the nearest officer, the Court reasoned that it still would not have mattered if they were even farther apart. *Id*. at 979; 981. Specifically, the Court stated, "Shooting Blough from a distance of twenty-five to thirty-six feet would not have violated any clearly established right." *Id.* The Court also stated,

> There is no rule that officers must wait until a suspect is literally within striking range, risking their own and others' lives, before resorting to deadly force. Considering how perverse such a rule would be, it is no surprise that no authority … clearly establishes it.

14

Case 3:22-cv-00721   Document 112   Filed 07/17/23   Page 14 of 16 PageID #: 771

*Id.* at 982. The Court ended by explaining the officers did not violate clearly established law for shooting Blough from five feet away and for that same reason they also would not have violated "clear constitutional law" by shooting him if he was 25-36 feet away. *Id.*

In summary, Plaintiff will not be able to provide clearly established case law that would have put Officer Llukaj on notice, as required under Plaintiff's burden when qualified immunity is raised as a defense. Due to case law supporting Officer Llukaj's actions and the lack of established law making it sufficiently clear that Officer Llukaj's actions were in violation of the law, Officer Llukaj is entitled to qualified immunity.

## V. CONCLUSION

Plaintiff has failed to state any claim against Defendant Officer Llukaj for which relief can be granted, and Defendant Officer Llukaj is entitled to qualified immunity. Therefore, Plaintiff's claims against Officer Llukaj should be dismissed.

/s/ *Samantha A. Burnett*
Robert M. Burns, #15383
Samantha A. Burnett, #37250
HOWELL & FISHER, PLLC
3310 West End Avenue, Suite 550
Nashville, TN 37203
rburns@howell-fisher.com
sburnett@howell-fisher.com
(615)921-5228 Direct
*Attorneys for City of Mt. Juliet
and Fabjan Llukaj*

# CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on this the 17th day of July 2023. Notice of Defendant Fabjan Llukaj's Memorandum of Law in support of Motion to Dismiss the Second Amended Complaint will be sent by operation of the Court's electronic filing system to:

David J. McKenzie
LAW OFFICE OF DAVID MCKENZIE
205 West Commerce Street
Lewisburg, TN 37091
david@davidmckenzielaw.com

Barbara G. Medley
MEDLEY & SPIVY
111 West Commerce Street, Suite 201
Lewisburg, TN 37091
bmedley@medleyandspivy.com
*Attorneys for Plaintiff*

Melissa Roberge
Michael R. Dohn
THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, TN 37219
melissa.roberge@nashville.gov
michael.dohn@nashville.gov
*Attorneys for Metro, Brian Murphy, Steven Carrick, Edin Plancic, Sean Williams, Justin Pinkelton, and James Kidd*

Meghan Murphy
Amanda Shanan Jordan
TENNESSEE ATTORNEY
GENERAL'S OFFICE
Civil Law Division
P.O.Box 20207
Nashville, TN 37202
meghan.murphy@ag.tn.gov
amanda.jordan@ag.tn.gov
*Attorneys for Reggie Edge, Jr. and Charles Achinger*

                                                  **/s/ *Samantha A. Burnett***

16

Case 3:22-cv-00721   Document 112   Filed 07/17/23   Page 16 of 16 PageID #: 773